UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

IRMON C. WILLIAMS #317017,

               Plaintiff,                    Case No. 2:09-cv-35

v.                                             Honorable R. Allan Edgar

MICHAEL MARINED, et al.,

               Defendants.

_____/

## OPINION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983.

**The Court has granted Plaintiff leave to proceed *in forma pauperis*, and Plaintiff has paid the initial partial filing fee.** Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Discussion**

I.     Factual allegations

Plaintiff Irmon C. Williams, an inmate at the Baraga Maximum Correctional Facility (AMF), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Corrections Officer Michael Marined, Sergeant Randy McClellan, Captain Unknown Schwab, Hearing Investigator Judy Green, Susan Burke, Richard Stapleton, Assistant Deputy Warden Dan Lesatz, Deputy Warden Linda Tribley, Resident Unit Manager Kathy Meni, Assistant Resident Unit Supervisor Tammy Gajewski, Assistant Deputy Warden William Leutzow, Assistant Deputy Warden William Jondreau, Assistant Resident Unit Supervisor Dennis Gerard, Resident Unit Manager R. LaLonde, Resident Unit Manager Terri Smith, Warden Gregory McQuiggin, Warden Gary Capello, Regional Prison Administrator James MacMeekin, Michigan Parole Board Member Barbara Sampson, Michigan Parole Board Member James Atterberry, and Cathy Williams, R.N.

Plaintiff was diagnosed as a chronic asthmatic at three months of age and has suffered numerous acute, and at times near fatal, asthma attacks. Over the course of his life, Plaintiff has endured long-term hospitalization, intubation, and numerous courses on medications as treatment for his asthma.

Plaintiff alleges that on June 13, 2005, he was given a special accommodation notice to be housed in tobacco free housing, on a ground floor, with a bottom bunk. On May 9, 2006, Plaintiff was transferred to AMF, where he was assigned to housing unit 5, cell 150. Plaintiff claims that within hours of his transfer, he was exposed to tobacco smoke in this location, suffered a serious asthma attack, and had to be given a breathing treatment. On May 10, 2006, Plaintiff was assessed

by Defendants Lesatz and Meni, at which time he was informed that he would be transferred to housing unit 6. However, before the move took place, Plaintiff suffered another asthma attack. On

May 14, 2006, Plaintiff was transferred to housing unit 6. Plaintiff continued to suffer severe asthma attacks. Defendants Williams and Hill disregarded Plaintiff's medical need to be transferred to a smoke-free facility. Plaintiff spoke with Assistant Resident Unit Supervisor Gina Healey, who stated that she would see about Plaintiff being moved to the ground floor and receiving a fan. However, Plaintiff remained in unit 6. In June of 2006, Plaintiff kited Defendants Tribley and Lesatz, but received no response. Plaintiff was later transferred to unit 7, a "tobacco allowed unit," because he had been assigned a kitchen work detail. Plaintiff continued to suffer asthma attacks which required treatment. Plaintiff's kites and complaints were disregarded, as were Plaintiff's grievances.

On June 19, 2006, Plaintiff was reevaluated by Dr. Richard Miller, who gave Plaintiff a "shot to expand his lungs" and prescribed him a steroid inhaler and oral medication. Plaintiff spoke with Defendant Williams and G. Hill regarding being given a fan in his cell or being transferred to a non-smoking facility. On June 20, 2006, Plaintiff mailed a complaint to Governor Jennifer Granholm. Plaintiff kited Defendants Lesatz and Sweeney on June 21, 2006, to no avail. On June 23, 2006, Plaintiff suffered another asthma attack caused by ETS and high temperatures. Plaintiff was given a major misconduct ticket by Defendant Marined for disobeying a direct order because Plaintiff refused to return to his cell, which was "infested" with ETS, which resulted in Plaintiff losing his job assignment. The misconduct was investigated by Defendant Green. Plaintiff was found guilty of the misconduct by Defendant Burke on July 5, 2006. Plaintiff's request for rehearing was denied by Defendant Stapleton.

Plaintiff was classified to administrative segregation. Security Classification Committee (SCC) members Defendants Jondreau, Luetzow, and Tribley, and Defendants McQuiggin and MacMeekin kept Plaintiff in administrative segregation for 109 days, during which he suffered severe asthma attacks brought on by ETS. In August of 2008, Plaintiff received a grievance response which stated that the entire facility would be tobacco free within a couple of months, so that all issues related to smoking would be alleviated. Plaintiff contends that he was subjected to exposure to ETS for a period of three years, during which he suffered from frequent severe asthma attacks.

Plaintiff claims that Defendants' conduct violated his rights under the Eighth, Thirteenth and Fourteenth Amendments. Plaintiff seeks declaratory and injunctive relief.

## II.     Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 129 S. Ct. at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft*, 129 S. Ct.

at 1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Ashcroft*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff claims that Defendants violated his rights under the Thirteenth Amendment, which provides:

> Neither slavery nor involuntary servitude except as a punishment for crime, whereof the party shall have been duly convicted, shall exist within the United States, nor any place subject to their jurisdiction.

U.S. CONST. amend. XIII. Plaintiff's confinement in prison occurred as the result of his state court conviction, and his confinement administrative segregation occurred as the result of a major misconduct conviction. In both instances, Plaintiff was duly convicted. Moreover, Plaintiff fails to allege facts showing that he was forced into anything constituting involuntary servitude. Therefore, this claim is properly dismissed.

Plaintiff claims that his major misconduct conviction and subsequent placement in administrative segregation violated his rights under the Fourteenth Amendment. Under Michigan law a prisoner is entitled to notice of a hearing, and the opportunity to present evidence and

arguments.  M.C.L. § 791.252.  A hearing officer is not bound by state or federal evidentiary rules, but rather may consider "evidence of the type commonly relied upon by reasonably prudent persons in the conduct of their affairs." *Id.*  Further, a hearing officer may deny a prisoner access to evidence that may pose a security concern if disclosed.  *Id.*  Plaintiff has failed to show that his constitutional rights were violated at his misconduct hearing.

Moreover, the hearing officer's conclusion that Plaintiff was guilty of the misconduct charge was supported by the record.  In the reasons for finding, the Hearing Officer stated:

> Prisoner does not deny that the officer told him to go to his cell. Prisoner says this is not a direct order, but it is not necessary for the officer to say, "I am giving you a direct order," in order for it to be a direct order.  Prisoner voluntarily failed to comply with the order by not going to his cell.  Prisoner says he is suffering from asthma and staff does not respond to his problems when he is locking in the cell to which he was ordered.  However, prisoner had just walked back form [sic] health services, so it is logical to conclude that he could continue walking to his cell.  I find that the order was reasonable in that compliance with the order would not create a significant risk of serious harm to the prisoner's well-being, the order does not conflict with a prior, but presently effective order, and compliance with the order was physically possible.

(Plaintiff's Appendix D.)

It is clear that Plaintiff received due process of law, and that he cannot support any claim that his constitutional rights were violated during the misconduct hearing.  Prison inmates subject to serious disciplinary action are entitled to (1) 24 hours advance written notice of the charges; (2) an opportunity to appear at a hearing, to call witnesses, and present rebuttal evidence when permitting the inmate to do so will not be unduly hazardous to institutional safety; and (3) a written statement by the factfinders as to the evidence relied upon for their decision which includes a statement as to the reasons for the decision.  *Wolff v. McDonnell*, 418 U.S. 539, 564-66 (1974).

If the prisoner received these procedural protections, and if there were "some facts" to support the decision of the hearings officer, then the prisoner received all the process to which he was due. *Superintendent of Massachusetts Institute, Walpole v. Hill*, 472 U.S. 445 (1985). Plaintiff has failed to show that his constitutional rights were denied.

In addition, in order to determine whether segregation of an inmate from the general prison population involves the deprivation of a liberty interest protected by the due process clause, the Court must determine if the segregation imposes an "atypical and significant" hardship on the inmate "in relation to the ordinary incidents of prison life." *Jones v. Baker*, 155 F.3d 910, 811 (6th Cir. 1998) (quoting *Sandin v. Conner*, 515 U.S. 472, 483 (1995)). Under various circumstances, the Sixth Circuit has repeatedly found that confinement to administrative segregation does not present an "atypical and significant" hardship implicating a protected liberty interest. *See Jones*, 155 F.3d at 812-23 (two years of segregation while inmate was investigated for murder of prison guard in riot); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995) (inmate serving life sentence was placed in segregation after serving thirty days of detention for misconduct conviction of conspiracy to commit assault and battery); *Mackey v. Dyke*, 111 F.3d 460 (6th Cir.1997) (one year of segregation after inmate was found guilty of possession of illegal contraband and assault and where reclassification was delayed due to prison crowding). The only allegation he presents regarding his segregation is that its duration has been for 109 days. The length of the placement is not determinative. *See Jones*, 155 F.3d at 812. Plaintiff has failed to make any allegations which that his segregation is "atypical and significant." Consequently, the court concludes that no liberty interest is implicated by his placement.

Finally, as noted above, Plaintiff is seeking only declaratory and injunctive relief. The court notes that as of February 1, 2009, all facilities in the MDOC are non-smoking areas. In addition, possession of tobacco products is prohibited in all of the correctional facilities. MDOC Policy Directive 01.03.140 (effective 02/01/09). The change in the prison policy renders Plaintiff's requests for declaratory and injunctive relief moot because no need exists for this court to issue an injunction when prison authorities have voluntarily changed the allegedly unconstitutional practice. *See Kellogg v. Shoemaker,* 46 F.3d 503, 507 (6th Cir.1995).

## Conclusion

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.

Dated:  ___11/20/09___                    ___/s/ R. Allan Edgar___
                                          R. ALLAN EDGAR
                                          UNITED STATES DISTRICT JUDGE